## LEWIS v BIG POWDERHORN MOUNTAIN SKI CORPORATION

### OPINION OF THE COURT

1. SALES—UNIFORM COMMERCIAL CODE—WARRANTIES—IMPLIED WARRANTIES—SERVICES—PRODUCTS.

   There are no implied warranties under the Uniform Commercial Code or warranties implied at law arising from the sale of a service unattached to a product.

2. NEGLIGENCE—SALES—IMPLIED WARRANTIES—SAFETY—INTERPRETATION—TOW ROPES.

   Actions for breach of implied warranty are bottomed on negligence; a claim of implied warranty of safety in the operation of a rope tow can be interpreted as nothing other than an implied promise not to operate the rope tow in a negligent manner.

### DISSENT BY T. M. BURNS, P. J.

3. SALES—SERVICES—IMPLIED WARRANTIES—LEGITIMATE EXPECTATIONS.

   *It should not be required that the sale of a product must accompany the provision of a service before implied warranties will arise; it is when the rendition of the service does not meet the legitimate expectations of the person being served and causes damage that a proper cause of action arises.*

4. TORTS—SALES OF SERVICES—NEGLIGENCE—IMPLIED WARRANTIES—CONTRACTS—SALES OF GOODS.

   *The object of the law is to provide just compensation to one suffering damage as the result of another's breach of a legal duty which may arise from the defendant's wrongful affirmative act, negligence, occupation of land, sale of a good, manufac-*

REFERENCES FOR POINTS IN HEADNOTES

[1] 67 Am Jur 2d, Sales § 464.
  Construction and effect of UCC Art 2, dealing with sales. 17 ALR3d 1010.
[2] 67 Am Jur 2d, Sales § 108.
[3] 67 Am Jur 2d, Sales §§ 495–501.
[4] 67 Am Jur 2d, Sales § 735.

*ture of a product, or provision of a service; a breach of implied
warranty in the provision of services, like a similar breach
arising from a sale of goods, is contractual in foundation and is
distinct from a negligence action.*

Appeal from Gogebic, Donald L. Munro, J. Submitted May 10, 1976, at Marquette. (Docket No. 23120.) Decided June 14, 1976. Leave to appeal applied for.

Complaint by Theresa Lewis and Robert Lewis against Big Powderhorn Mountain Ski Corporation seeking damages for personal injuries arising from negligence and breach of implied warranties. Defendant's motion to dismiss the implied warranties count granted. Judgment for defendant. Plaintiffs appeal. Affirmed.

*Wisti & Jaaskelainen* (by *James F. Tercha)*, for plaintiffs.

*McLean & McCarthy,* for defendants.

Before: T. M. Burns, P. J., and R. B. Burns and V. J. Brennan, JJ.

R. B. Burns, J. Plaintiff Theresa Lewis claims to have been injured while riding a rope-tow at defendant's ski facility. Plaintiff's second amended complaint contained three counts reflecting alternative legal theories of liability. The trial judge granted defendant's motion to dismiss on all counts except negligent operation of the rope-tow, and the jury returned a verdict of no cause of action on that theory. This appeal focuses its challenge on the trial court's dismissal of plaintiffs' count for breach of implied warranties.

The parties agree that a sale of goods is not involved and, therefore, that Article 2 of the Uniform Commercial Code and the implied warranties

contained therein do not apply. Instead, plaintiffs contend that "[a]part from statute, implied warranties may apply", *Insurance Co of North America v Radiant Electric Co,* 55 Mich App 410, 412; 222 NW2d 323, 324 (1974), and base their argument on a dicta pronouncement of this Court in *Buckeye Union Fire Insurance Co v Detroit Edison Co,* 38 Mich App 325; 196 NW2d 316 (1972).

*Buckeye Union* involved a "service", the sale of electricity, inseverably linked to a tangible (and defective) "product", electricity, sold by the kilowatt. Similarly, the two cases upon which *Buckeye Union* relied, *Hoffman v Misericordia Hospital of Philadelphia,* 439 Pa 501; 267 A2d 867 (1970), and *Newmark v Gimbel's, Inc,* 54 NJ 585; 258 A2d 697 (1969), involved defective products which were administered to the respective plaintiffs as part of an alleged sale of a service. None of these cases constitute authority for the proposition that implied-at-law warranties arise from the sale of a service unattached to a product. *Buckeye Union* recognized that a product was involved in the service (p 331):

"The record is lacking in any substantive proof that the fire in plaintiffs' house was caused by a defect in the manufacture or delivery of the electricity."

The only product in this case that could conceivably be divined by the exercise of ingenuity is "a weekend of skiing", presumably to necessarily include use of a rope-tow. We cannot consider this to be a product within the plain and common meaning of the term.

In what way may sale of a pure service logically be distinct from sale of a good or product? The law of *products* liability provides the fiction of implied warranties to enable a "consumer [to] sue a manu-

facturer directly for economic loss resulting from a defect in a product attributable to the manufacturer *without proving negligence". Cova v Harley Davidson Motor Co,* 26 Mich App 602, 609; 182 NW2d 800, 804 (1970). (Emphasis added.) What, however, *is* an implied warranty in a nonproduct situation? For one, it is clearly meaningless to consider a warranty of merchantability in this context. Neither, on the facts of this case, can it be a warranty of fitness for purpose: plaintiffs were unable to provide any evidence as to defectiveness or unfitness of the rope-tow apparatus.

Plaintiffs, rather, find a *defect in service* and contend the existence of "implied warranties as to safety in the operation of [the] rope tow". But as it is not (and cannot seriously be) contended that "strict liability" should lie for operation of the rope-tow, any "implied warranty of safety" can be nothing other than an implied promise not to operate the rope-tow in a negligent manner. And this question, negligent operation, is precisely that which the jury was properly allowed to determine.

"Products liability" has carved a wide and confusing swath across the law of tort and contract. Judge, now Justice, LEVIN has acutely recognized the complications spawned by the "misleading terminology of warranty" and the "amalgam of all those concepts". *Cova v Harley Davidson Motor Co, supra,* pp 614–615. In *Spence v Three Rivers Builders & Masonry Supply, Inc,* 353 Mich 120, 131; 90 NW2d 873, 879 (1958), the Supreme Court concluded that products liability actions for breach of implied warranty are, in the last analysis, "bottomed on negligence". We can see nothing to be gained by further obscuring the procedures of pleading and proof by encouraging plaintiffs to couch the identical argument in alternative theo-

retical forms, one valid and one imaginative. The judgment is affirmed.

Costs to defendant.

V. J. BRENNAN, J., concurred.

T. M. BURNS, P. J. *(dissenting)*. I cannot agree with the majority's interpretation of my opinion in *Buckeye Union Fire Insurance Co v Detroit Edison Co,* 38 Mich App 325; 196 NW2d 316 (1972).

For implied warranties to arise from the sale of a good there must be a "sale" of a "good". For implied warranties to arise from the provision of a service, there must be a providing of a service. The perceived requirement that the sale of a product must accompany the provision of a service before implied warranties will arise does not make sense to me.

The purchaser of services rightfully may expect that those services will be properly provided. If a homeowner contracts to have his house painted, he should legitimately expect that the painter will do a reasonably adequate job whether the painter provides the paint or not. The painter's "product", if there must be one, is the performance of his work.[1] If a skier purchases a ticket to ride a tow rope, she legitimately expects that the tow will be operated in a reasonably safe manner. To require the injured skier to prove that the towing mechanism itself is defective is without reason. It is when the rendition of the service does not meet the legitimate expectations of the person being served that a proper cause of action arises.

The confusion caused by the very use of the

---

[1] Of course, if the harm suffered by the purchaser of the service is due to some defect in a product not supplied by the seller of the service, the purchaser's problem becomes one of proving proximate cause.

term "implied warranty" arises once again. The term essentially connotes an action resting upon a contractual relation between the parties. Its use in describing an action more suitably designated "products liability" or "manufacturer's liability", while misdescriptive, relates ultimately to the same legal policy of holding liable one whose actions have done damage to another by failing to meet one's reasonable expectations. Whether the cause of action arises *ex contractu* or *ex delicto* or is implied in law or in fact, however, is irrelevant to its legitimacy. The object is to provide just compensation to the person suffering damage as the result of another's breach of a legal duty. That legal duty may arise from the defendant's wrongful affirmative act, negligence, occupation of land, sale of a good, manufacture of a product, or provision of a service.

The cause of action of breach of implied warranty in the provision of services is closely related to the same cause of action arising from the sale of goods. The action is contractual in foundation. It is indeed distinct from the negligence action. The liability of neither the seller of the defective goods nor the manufacturer of defective products depends upon a showing of negligence. The policy underlying the liability of the seller and manufacturer applies with equal logic to that of the provider of a service. I find no compelling distinction.

I would reverse.